UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

SECURITIES AND EXCHANGE COMMISSION,

           Plaintiff,

v.

CHAD ANTHONY LEWIS,

           Defendant.

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges and states as follows:

### INTRODUCTION

1. From approximately September 2013 through approximately July 2016, Defendant, Chad Anthony Lewis, solicited investors and assisted other sales agents in soliciting and raising money from investors in unregistered, fraudulent securities offerings conducted by Aegis Oil, LLC ("Aegis") and 7S Oil & Gas, LLC ("7S"). Lewis did not hold any securities licenses; was not registered with the Commission; was not associated with Commission-registered broker dealers nor did he qualify for an exemption. Lewis was thus not permitted to sell securities.

2. Both Aegis and 7S offered and sold unregistered securities in the form of "joint venture units" in oil and gas development projects located in Texas. Through Lewis and other sales agents, Aegis raised approximately $35 million from about 250 investors nationwide, and 7S raised approximately $7 million from at least 70 investors. Lewis, through his work at Aegis

and 7S, earned approximately $625,000 in commissions from the sale of these Aegis and 7S units.

3. By engaging in this conduct, Defendant violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a) and 77e(c)] and Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)]. Unless enjoined, Defendant is reasonably likely to continue to violate the federal securities laws.

4. The Commission also seeks disgorgement of all ill-gotten gains, including prejudgment interest thereon; an order directing the Defendant to pay civil money penalties; and any other relief that may be necessary and appropriate.

## DEFENDANT

5. Lewis, age 48, resides in Bowling Green, Kentucky. Lewis is not, and has never been, registered with the Commission, the Financial Industry Regulatory Authority ("FINRA"), or any state securities regulatory authority.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

7. This Court has personal jurisdiction over the Defendant, and venue is proper in the Southern District of Florida because, among other things, Defendant visited sales offices to train sales teams and received commissions from sales activities of agents located in the Southern District of Florida.

8. In connection with the conduct alleged in the Complaint, Defendant, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of

interstate commerce, the means or instruments of transportation or communication in the interstate commerce, and of the mails.

## FACTUAL BACKGROUND

### A. Unregistered Securities Offerings

9. Between October 2010 and October 2015, Aegis raised a total of approximately $35 million from approximately 250 investors nationwide through the fraudulent, unregistered offers and sales of securities in a continuous series of 15 offerings.  See SEC v. Aegis Oil, LLC, et al., Civil Action No. 16-cv-62335-BB (S.D. Fla., Sept. 29, 2016).

10. Between November 2014 and July 2016, 7S, which previously served as the field operator for the Aegis projects, began offering and selling its own investments in oil well projects to the public.  During this period, 7S raised approximately $7 million from at least 70 investors through the fraudulent, unregistered offers and sales of securities in a continuous series of 8 offerings.  See SEC v. 7S Oil & Gas, LLC, et al., Civil Action No. 17-cv-22914-UU (S.D. Fla., Aug. 1, 2017).

11. The securities sold in all offerings were investment contracts in the form of "units" in oil and gas related "joint venture" projects located in Texas.  Aegis and 7S offered and sold their securities to the public primarily through a network of sales agents, who would cold-call potential investors throughout the country using lead lists.  Aegis generally paid its sales agents a 35% commission on each sale, which came out of the investor's principal investment. 7S paid its agents commissions ranging from 20% to 35%, also out of investor money.  Neither Aegis nor 7S disclosed to investors the payment of commissions higher than 10%.

12. Sales agents pitched the Aegis and 7S securities to potential investors based on promises of exaggerated rates of return, while minimizing the risks associated with the

investment.  For example, some of the agents told investors that they would receive returns on their investment, ranging from 15% to 200% on the Aegis units and 20% to 30% on the 7S units.  Some investors were also told by agents that these investments had virtually no risk because, among other things, the projects were already up and running and the wells were located in areas that have produced millions of barrels of oil.

13. After the initial phone contact with potential investors, sales agents would facilitate getting investors the companies' offerings materials.  In Aegis, the sales agents would send the investor's contact information to the company so that a package of materials, including a private placement memorandum ("PPM") could be mailed out to the investor.  The agents in 7S would direct prospects to that company's website and issue them a password in order to access certain password-protected parts of the website, including access to the PPMs.  The PPMs for both offerings contained standard boilerplate cautionary language about the investment and the "high degree of risk" involved, but did not contain any information that cured the misstatements and omissions that were made to investors.

### B. Lewis' Unregistered Securities and Broker Activity

14. Between September 2013 and July 2016, Lewis worked at different times both for Aegis and 7S.  Lewis was recruited by Aegis to work in the company's sales department because of his knowledge of oil wells and previous experience working in the oil and gas industry.

15. Lewis was hired to train the Aegis's network of outside sales agents, which entailed traveling to the various sales offices to provide training on the Aegis oil wells.  Lewis also acted as the liaison between the sales agents and the field operator for the various oil well projects so sales agents could get the information they needed when speaking to investors.

16. Lewis assisted other agents in closing on sales calls with investors by answering any questions the investors had about the oil well projects, and Lewis also gave investors guided tours of the various Aegis oil wells projects.

17. For his work while at Aegis, Lewis was paid a commission of 2% on all investor proceeds raised through the Aegis offerings by Aegis's network of sales agents.

18. Lewis also directly solicited at least one investor, who purchased multiple units in the various Aegis offerings. Lewis received commissions ranging from 20% to 25% from the proceeds of each of the investments made by this investor.

19. Between September 2013 and November 2014, Lewis was paid commissions of approximately $374,000 from Aegis.

20. After leaving Aegis in approximately December 2014, Lewis was hired by 7S to take on a similar role. There he held the title of "Sales Manager" and was again responsible for helping train sales agents. Lewis also assisted with investor sales calls by answering questions and providing information about the 7S oil wells.

21. Lewis received a 2% commission from 7S on all investor proceeds raised. He was also paid a 31% commission for selling a unit in one of the 7S offerings to the same investor he had sold the Aegis units. Between January 2015 and July 2016, Lewis, through his company, Dreamcatcher, LLC, received approximately $250,700 in commission payments from 7S.

## **CLAIMS FOR RELIEF**

### **COUNT I**

### **Violations of Sections 5(a) and 5(c) of the Securities Act**

22. The Commission repeats and realleges paragraphs 1 through 21 of this Complaint.

23. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities sold by the Defendant as described in this Complaint and no exemption from registration existed with respect to these securities.

24. From approximately September 2013 until July 2016, Lewis directly and indirectly:

> (a) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;
>
> (b) carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or
>
> (c) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security;

without a registration statement having been filed or being in effect with the Commission as to such securities.

25. By reason of the foregoing Lewis violated and, unless enjoined, is reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### **COUNT II**

### **Violation of Section 15(a)(1) of the Exchange Act**

26. The Commission repeats and realleges paragraphs 1 through 21 of this Complaint.

27. From approximately September 2013 until about July 2016, Lewis, directly or indirectly, by the use of the mails or the means or instrumentalities of interstate commerce, while acting as or associated with a broker or dealer, effected transactions in, or induced or attempted to induce the purchase or sale of securities, while he was not registered with the Commission as a broker or dealer or when he was not associated with an entity registered with the Commission as a broker-dealer.

28. By reason of the foregoing, Lewis directly and indirectly violated and, unless enjoined, is reasonably likely to continue to violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendant committed the violations alleged and:

### I.
### Permanent Injunction

Issue a Permanent Injunction, restraining and enjoining Lewis, his agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with them, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] and Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

### II.
### Disgorgement and Prejudgment Interest

Issue an Order directing Lewis to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts and/or courses of conduct complained of herein.

## III.
## Civil Penalty

Issue an Order directing Lewis to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

## IV.
## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## V.
## Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated: August 13, 2018

                Respectfully submitted,

By:   */s/ Russell Koonin*_____
      Russell Koonin
      Senior Trial Counsel
      Fla. Bar No. 474479
      Direct Dial: (305) 982-6385
      Facsimile (305) 536-4154
      E-mail: kooninr@sec.gov

      Raynette R. Nicoleau
      Senior Counsel
      Fla. Bar No. 278210
      Direct Dial: (305) 982-6308
      Facsimile (305) 536-4146
      Email: nicoleaur@sec.gov

Shan Chang
Counsel
S.D. Fla. No.: A5502239
Direct Dial: (305) 982-6319
Facsimile (305) 536-4146
Email:  changsh@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154